IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DANNY JOHNSTON,<br>    PLAINTIFF/COUNTER-DEFENDANT, | §<br>§<br>§ | |
| V. | §<br>§ | |
| PATRICIA ANN JOHNSTON,<br>    DEFENDANT/COUNTER-PLAINTIFF | §<br>§<br>§ | CASE NO. 6:23-CV-413-JDK-KNM |
| V. | §<br>§<br>§ | |
| EAST TEXAS OIL FIELD CONSTRUCTION,<br>LLC,<br>    COUNTER-DEFENDANT | §<br>§<br>§<br>§ | |

## PATRICIA JOHNSTON'S MOTION FOR DEFAULT JUDGMENT AGAINST EAST TEXAS OIL FIELD CONSTRUCTION, LLC

Pursuant to Federal Rule of Civil Procedure 55 and the Court's January 30, 2024 order (Doc. No. 37), Counter-Plaintiff Patricia Johnston ("Patricia") moves for default and entry of a default judgment against Counter-Defendant East Texas Oil Field Construction, LLC ("ETOFC").

### SUMMARY OF MOTION

ETOFC never answered Patricia's counterclaim. When the Court gave ETOFC an opportunity to prove its argument that diversity jurisdiction was lacking, ETOFC declined. When the Court ordered ETOFC to obtain new counsel, ETOFC refused. Procedurally and substantively, Patricia is entitled to entry of default and default judgment against ETOFC and an award of all relief requested in her counterclaim against it.

### PROCEDURAL BACKGROUND

Patricia filed a counterclaim against ETOFC on August 22, 2023 for breach of contract and foreclosure of her lien against specific personal property (Doc. No. 5). ETOFC was served with

summons on September 30, 2023 (Doc. No. 13), but it did not answer Patricia's counterclaim.[1] On October 20, 2023, ETOFC and co-counter-defendant Danny Johnston ("Danny") filed a motion to dismiss Patricia's counterclaim, under Federal Rule of Civil Procedure 12(b)(1), alleging that the Estate of Thomas Johnston was a necessary party which defeated the Court's diversity jurisdiction over this matter (Doc. No. 17). On October 30, 2023, Patricia responded showing that their motion to dismiss was meritless (Doc. No. 20).

On November 14, 2023, ETOFC's counsel sought leave to withdraw (Doc. No. 24). The Court conducted a status conference and motion hearing on November 28, 2023 (Docs. Nos. 26-27). During this hearing and by order thereafter, the Court granted leave for ETOFC's counsel to withdraw and instructed Danny to obtain new counsel for ETOFC within 45 days (*id.*).[2] Additionally, the Court invited ETOFC and Danny to seek leave to join the Estate of Thomas Johnston if they truly believed the Estate was a necessary party (*id.*). On December 1, 2023, Danny and ETOFC abandoned their argument that the Estate of Thomas Johnston was a necessary party, thereby making their motion to dismiss moot (Docs. Nos. 31, 34).

On January 9, 2024, the Court ordered Danny to file an update regarding the status of obtaining new counsel for ETOFC before January 12, 2024 (Doc. No. 34). He did <u>not</u> file a status update as ordered (Doc. No. 37). On January 30, 2024, the Court ordered that Patricia should be permitted to seek the entry of default and a default judgment against ETOFC if a licensed attorney does not enter a written appearance on behalf of ETOFC within 30 days, *i.e.*, by February 29, 2024 (*id.*). As of April 5, 2024, no licensed attorney has entered a written appearance on behalf of ETOFC.

---

[1] Patricia requests that the Court take judicial notice of the documents filed in this matter. FED. R. EVID. 201.

[2] A limited liability company cannot represent itself in a lawsuit but must be represented by a licensed attorney. *See United States ex rel. Proctor v. Next Health LLC*, 652 F. Supp. 3d 788, 794 (E.D. Tex. 2023); *Texas Construction Specialists, L.L.C. v. Ski Team VIP, L.L.C.*, 659 S.W.3d 67, 74 (Tex. App.—Houston [14th Dist.] 2022, pet. denied).

## FACTUAL BACKGROUND

In December 2020, Patricia agreed to sell certain personal property to ETOFC (Doc. No. 5-2) (the "Bill of Sale"), and, in return, ETOFC promised to pay her $191,500.00 "in equal monthly installments of [$5,000.00], on the first day of each month, beginning August, 2020 and continuing until the unpaid principal has been paid in full" (Doc. No. 5-1) (the "Promissory Note").[3] Based on that payment schedule, the Promissory Note would mature, and all unpaid amounts would be due and owing, on October 1, 2023.[4]

The property which Patricia sold to ETOFC consisted of:

Any and all assets of East Texas Oil Field Construction, including but not limited to, its name, goodwill, receivables, claims, furniture, fixtures, machinery, machinery listed below, equipment, inventory, accounts, goods, supplies, and personal property used in connection with the operation of the business, the exclusive right to the name of East Texas Oil Field Construction, desks, office supplies, account receivables, cash, and bank accounts.

D5K2 Dozer Serial Number: KY202873
D4G Dozer Serial Number: TLY00793
CAT 420E Backhoe Serial Number: DJL0269
CASE 580 Super L Backhoe Serial Number: 00270801
CAT 320C Track hoe Serial Number: 0320CLEA600903
7610 New Holland Tractor Serial Number: 81866555
6610 New Holland Tractor Serial Number: E9NN7006A 3600 Ford Tractor
Two 8' mowers
8' Disc
6' Disc
Single row planter
Plow
Band saw mill
Wood mizer Serial Number: 45LB42413GVBA6073
Volvo 70C rubber tire loader Serial Number: L70CV13879
Noram 65E motor grader Serial Number: 65E79507
Chevrolet pickup VIN: lgb4kzcl90f88514
Goose Neck Trailer 28' Legend Serial Number: 5D3BG2929EE104596
Goose Neck Trailer 32' Trail Master Serial Number: 5BEBF32257C144483
Goose Neck Trailer PJ 28' 4P5FD3027Cl 178980

---

[3] Declaration of Patricia Johnston attached hereto ("Johnston Declaration") at ¶¶ 2-3. No interest rate is specified in the Promissory Note (Doc. No. 5-1).

[4] Declaration of Jim E. Bullock attached hereto ("Bullock Declaration") at ¶¶ 2-4.

(collectively, the "Business Property") (Doc. No. 5-2, pp. 2-3).[5] Patricia retained a "first and superior

vendor's lien" against, and superior title" to the Business Property securing ETOFC's fulfillment of

its obligations in the Promissory Note (Docs. Nos. 5-1 at p. 2, 5-2 at p. 2). Patricia perfected her lien

by filing a UCC-1 financing statement with the Texas Secretary of State (Doc. 5-3).

ETOFC made no payments in August 2020 or September 2020.[6] Between October 2020 and

September 2021, ETOFC made the following payments:[7]

| Payment Date | Check Number | Payment Amount |
|---|---|---|
| 10/1/2020 | 4608 | $5,000.00 |
| 10/30/2020 | 4664 | $5,000.00 |
| 12/1/2020 | 4752 | $5,000.00 |
| 1/2/2021 | 4800 | $3,000.00 |
| 1/2/2021 | 4801 | $2,000.00 |
| 1/29/2021 | 4832 | $5,000.00 |
| 3/5/2021 | 4842 | $5,000.00 |
| 3/30/2021 | 4950 | $5,000.00 |
| 4/3/2021 | 4883 | $5,000.00 |
| 4/29/2021 | 4916 | $5,000.00 |
| 7/19/2021 | 4982 | $5,000.00 |
| 7/31/2021 | 4998 | $5,000.00 |
| 9/13/2021 | 5033 | $5,000.00 |

ETOFC sent a payment in October 2021 that "bounced" due to insufficient funds.[8] ETOFC made a

partial payment of $2,500.00 on June 11, 2022 (check number 5129) but made no payment since June

11, 2022.[9] In total, ETOFC only paid Patricia $62,500.00 of the $191,500.00 original principal balance,

leaving a total unpaid principal balance of $129,000.00.[10] Pursuant to Texas Finance Code section

---

[5] Citations to documents filed via the Court's CM/ECF system refer to the page number at the top of each page rather than page numbers at the bottom of a filing.

[6] Johnston Declaration at ¶ 4.

[7] Johnston Declaration at ¶ 5; Declaration of Melinda Naquin attached hereto ("Naquin Declaration") at ¶ 2.

[8] Johnston Declaration at ¶ 6; Naquin Declaration at ¶ 3.

[9] Johnston Declaration at ¶ 7; Naquin Declaration at ¶ 3.

[10] Bullock Declaration at ¶ 5.

302.002,[11] ETOFC owes Patricia interest of $11,266.97 on the unpaid principal balance through April 1, 2024.[12]  Hence, ETOFC owes Patricia the sum of $140,266.97.

**ARGUMENT & AUTHORITIES**

**1.      Entry of default is appropriate.**

A default occurs when a defendant fails to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure, and the Court's clerk enters a default when the default is established by affidavit or otherwise. FED. R. CIV. P. 55(a); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *Williams v. Licari*, No. 4:22-CV-5-ALM-KPJ, 2023 WL 6048774, at *3 (E.D. Tex. Sept. 14, 2023). Indeed, default can be entered against a party for failing to follow the Court's orders. *See Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018) (default affirmed where party failed to comply with local rules regarding the admission of counsel after the Court warned that failure to comply would result in an entry of default). When, as here, a limited liability company declines to hire counsel to represent it, the Court may render judgment against it. *See Huffines Retail Partners, LP v. Atlas Apartments Acquisition, LLC*, No. 3:19-CV-2425-S-BH, 2021 WL 965920, at *1 (N.D. Tex. Feb. 17, 2021), *report and recommendation adopted sub nom. HC Operating, LP v. Atlas Apartments Acquisition, LLC*, No. 3:19-CV-2425-S-BH, 2021 WL 963755 (N.D. Tex. Mar. 15, 2021).

Patricia filed her counterclaim and served ETOFC with summons last fall, but ETOFC did not answer her counterclaim. Rather, it argued that a necessary party was missing which defeated diversity jurisdiction; however, when afforded an opportunity to join this party, ETOFC declined. After its counsel obtained leave to withdraw, the Court instructed Danny (ETOFC's owner) to obtain

---

[11] "If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due." TEX. FIN. CODE § 302.002.

[12] Bullock Declaration at ¶ 6.

new counsel and gave him ample time to comply. After Danny and ETOFC ignored the Court's continued warnings, the Court ordered that Patricia would be permitted to seek entry of default and a default judgment against ETOFC if a licensed attorney does not enter a written appearance on its behalf of ETOFC by February 29, 2024. As of April 5, 2024, no licensed attorney has entered a written appearance on behalf of ETOFC. The Court should instruct the clerk to enter a default against ETOFC.

**2.      A default judgment against ETOFC is warranted.**

After a defendant's default has been entered, the plaintiff may apply for entry of a default judgment. *New York Life*, 84 F.3d at 141; *Williams*, 2023 WL 6048774 at *3. In determining whether a default judgment should be entered, courts in the Fifth Circuit have developed a three-part analysis assessing: (a) whether the default judgment is procedurally warranted, (b) whether there is a sufficient basis in the pleadings for the judgment, and (c) what form of relief, if any, should be granted. *Griffin v. O'Brien, Wexler, & Associates, LLC*, No. 4:22-CV-00970, 2023 WL 4303649, at *2 (E.D. Tex. June 30, 2023); *Express Working Capital, LLC v. One World Cuisine Group, LLC*, No. 3:15-CV-3792-S-BH, 2019 WL 1959924, at *3 (N.D. Tex. Apr. 10, 2019), *report and recommendation adopted*, No. 3:15-CV-3792-S-BH, 2019 WL 1958332 (N.D. Tex. May 2, 2019).

**A.      A default judgment is procedurally warranted.**

In considering whether a default judgment is procedurally warranted, the Court considers six factors: (i) whether material issues of fact exist; (ii) whether there has been substantial prejudice; (iii) whether the grounds for default are clearly established; (iv) whether the default was caused by a good faith mistake or excusable neglect; (v) the harshness of a default judgment; and (vi) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

No material issues of fact exist here. In her counterclaim, Patricia alleged that ETOFC executed the Promissory Note (and attached a copy bearing its agent's signature), that ETOFC failed

to perform its obligations and had not made a payment since June 2021, and that she complied with the Promissory Note's notice requirements. ETOFC did not answer Patricia's complaint and has conceded Patricia's allegations. *See Griffin*, 2023 WL 4303649 at \*3; *Cunningham v. Crosby Billing Services, Corp.*, No. 4:18-CV-00043-ALM-CAN, 2018 WL 6424792, at \*3 (E.D. Tex. Oct. 14, 2018), *report and recommendation adopted*, No. 4:18-CV-43, 2018 WL 6424695 (E.D. Tex. Dec. 5, 2018). No material issue of fact exists.

Default judgment would not constitute a harsh remedy. ETOFC unnecessarily delayed this case by refusing to answer Patricia's counterclaim, pressing a meritless motion to dismiss, and failing to obtain new counsel despite the Court's orders with ample opportunity to comply; rather than suffering prejudice, ETOFC has caused Patricia prejudice. *Id.*; *Express Working Capital*, 2019 WL 1959924 at \*4. A default judgment is <u>not</u> unusually harsh in this case.

Grounds for default are clearly established and were not caused by a good faith mistake or excusable neglect. After being served with summons, ETOFC did not answer Patricia's counterclaim; instead, it claimed a necessary party was missing: a party that, if joined, would defeat the Court's diversity jurisdiction. When that claim was challenged, it was abandoned. More than six months after being served with summons, ETOFC still has not answered Patricia's counterclaim. ETOFC clearly defaulted. FED. R. CIV. P. 55(a); *New York Life*, 84 F.3d at 141; *Williams*, 2023 WL 6048774 at \*3. Further, ETOFC defied the Court's orders to obtain new counsel or suffer default, despite having ample time to comply. ETOFC's default was not caused by a good faith mistake or excusable neglect but rather by its contumacious refusal to comply with procedural rules and this Court's orders, justifying an entry of default and default judgment. *Sindhi*, 905 F.3d at 332; *I.B.E.W. Local Union No. 479 Annuity 401K Fund v. Beaumont Electric, Inc.*, No. 1:15-CV-203, 2015 WL 13298143, at \*1 (E.D. Tex. Aug. 3, 2015); *United States v. Dolenz*, No. CIV. 309CV1311O, 2010 WL 428910, at \*2 (N.D. Tex. Feb. 2, 2010).

Finally, the Court should not think itself obliged to set aside the default upon subsequent request. ETOFC's conduct (refusing to answer Patricia's counterclaim, filing then abandoning a specious motion to dismiss, flatly disregarding the Court's orders to obtain new counsel and for status reports), delayed this action and prejudiced Patricia by delaying her relief. In similar situations, courts have found no basis upon which they would be obligated to set aside the default. *Griffin*, 2023 WL 4303649 at *3; *Express Working Capital*, 2019 WL 1959924 at *4; *Cunningham*, 2018 WL 6424792 at *3.

Put simply, a default judgment against ETOFC is procedurally warranted.[13]

### B.    Patricia is entitled to a default judgment based on her pleadings.

Next, the Court assesses whether there is a sufficient basis in Patricia's pleadings for the judgment (even though ETOFC is deemed to have admitted the allegations in her complaint). *Griffin*, 2023 WL 4303649 at *4; *Express Working Capital*, 2019 WL 1959924 at *4. Ultimately, "the factual allegations in [her counterclaim] need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal notations omitted).

### i.    ETOFC defaulted under the Promissory Note (Patricia's Claim Three)

Patricia claims that ETOFC defaulted under the Promissory Note (Doc. No. 5 at ¶¶ 31-34, 45-47). Under Texas law,[14] Patricia must show that (a) the Promissory Note exists, (b) ETOFC signed the Promissory Note, (c) she is entitled to enforce the Promissory Note, and (d) a certain balance is due and owing under the Promissory Note. *See SGK Properties, L.L.C. v. U.S. Bank National Association*

---

[13] One court has also required a party seeking default to make a prima facie showing of jurisdiction. *TFHSP, LLC Series 10147 v. U.S. Bank National Association*, No. 3:14-CV-2589-M-BN, 2016 WL 2856006, at *2 (N.D. Tex. Apr. 18, 2016), *report and recommendation adopted sub nom. TFHSP, LLC v. U.S. Bank National Association*, No. 3:14-CV-2589-M-BN, 2016 WL 2853565 (N.D. Tex. May 13, 2016). Patricia has shown that she is a resident of Louisiana, that ETOFC is a Texas limited liability company, and that the amount in controversy exceeds $75,000.00; thus, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (Doc. 5 at ¶¶ 1, 3-4).

[14] In diversity cases, federal courts apply the forum state's substantive law and the federal procedural rules. *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023).

---

*for Lehman Bros. Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 941 (5th Cir. 2018); *F.D.I.C. v. Foxwood Management Company*, 15 F.3d 180 (5th Cir. 1994).

The Promissory Note exists; a true and correct copy is attached to Patricia's counterclaim (Doc. No. 5-1).[15] The Promissory Note is signed by Daniel Wylie Johnston (a/k/a Danny Johnston), ETOFC's sole member (Doc. No. 5-1 at p. 4).[16] The Promissory Note names Patricia as the "Lender" and the payee entitled to enforce it (*Id.*, at pp. 2-3).[17] As "Borrower," ETOFC promised "to pay to the order of Lender the Principal Amount" and agreed "in the event of a default…Lender may declare the unpaid principal balance, and any other amounts owned on the note immediately due and may exercise all other rights and remedies available at law or in equity" (*Id.*).[18] Patricia complied with the notice of default requirements of the Promissory Note (Docs. Nos. 16-3 and 16-8); however, ETOFC did not cure its default.[19] ETOFC paid Patricia only $62,500.00 of the $191,500.00 principal balance leaving $129,000.00 unpaid and owing under the Promissory Note.[20] Additionally, ETOFC owes Patricia interest of $11,266.97 through April 1, 2024.[21] ETOFC owes Patricia a sum certain balance of $140,266.97 under the Promissory Note. There is a sufficient basis in the pleadings for Patricia to recover on the Promissory Note against ETOFC. *See Express Working Capital*, 2019 WL 1959924 at *5.

---

[15] Johnston Declaration at ¶ 2.

[16] Danny is the sole member and manager of ETOFC (Doc. No. 20 at p.1, footnote 1, and Exhibits 1-2 attached thereto). As such, he has authority to bind ETOFC. TEX. BUS. ORGS. CODE §§ 101.251, 101.254.

[17] "Lender" is defined as "Patricia Ann Johnston, individually and as independent executor of the estate of Thomas William Johnston, deceased" (Doc. No. 5-1 at p. 1). As the independent executor and sole beneficiary of her husband's estate, she held all interests in repayment under and enforcement of the Promissory Note (Doc. 20 at pp. 2, 5-8). Moreover, the estate of Thomas William Johnston has been closed. Johnston Declaration at ¶¶ 2-3.

[18] ETOFC and Danny are each liable under the Promissory Note (Doc. No. 5-1 at p. 4).

[19] Johnston Declaration at ¶ 7; Naquin Declaration at ¶ 3.

[20] *Supra* at footnotes 6-10.

[21] *Supra* at footnotes 11-12.

---

### ii.    The Court should foreclose Patricia's lien (Patricia's Claim Four)

Patricia claims a security interest in the Promissory Note and Bill of Sale which gives her a lien against the Business Property; she asks the Court to foreclose this lien, take possession of the property, sell it at public auction, and thereafter enter judgment for any deficient balance (Doc. No. 5 at ¶¶ 32, 49). Under Texas law,[22] if the seller of title in property retained or reserved an interest in the property to secure the buyer's payment or performance of an obligation, then the seller has a security interest in the property. TEX. BUS. & COM. CODE §§ 1.201(b)(35), 2.401(a). A security agreement need not be evidenced by a single document; two or more writings, considered together, may constitute a security agreement. *Matter of Miller*, 545 F.2d 916, 919 n. 4 (5th Cir. 1977); *In re ProvideRx of Grapevine*, 507 B.R. at 153; *In re Webber*, 350 B.R. 344, 385 (Bankr. S.D. Tex. 2006). Courts examine whether the substance and language of the documents lead to a logical conclusion that the parties intended to create a security interest in the property; no formal wording is required. *Sommers v. International Business Machines*, 640 F.2d 686, 689 (5th Cir. 1981) (internal notations omitted); *In re ProvideRx of Grapevine*, 507 B.R. at 153, 160.[23] If the debtor defaults, the secured party may reduce her claim to judgment and foreclose, or otherwise enforce, the security interest and may sell or otherwise dispose of the collateral. FED. R. CIV. P. 69; TEX. BUS. & COM. CODE §§ 9.601(a)(1), 9.610(a); *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 769 (S.D. Tex. 2013).

Here, the Bill of Sale (Doc. No. 5-2) and the Promissory Note (Doc. No. 5-1) evidence the transaction between Patricia and ETOFC. The Bill of Sale states the Business Property is sold in consideration of the Promissory Note which "is secured by a first and superior vendor's lien and superior title retained in this Bill of Sale" (Doc. No. 5-2 at p. 2). The Promissory Note states that

---

[22] Whether an agreement constitutes a security arrangement is determined with reference to state law. *In re ProvideRx of Grapevine, LLC*, 507 B.R. 132, 152 (Bankr. N.D. Tex. 2014).

[23] The property is sufficiently identified if its description reasonably identifies the property or by another method if the identity of the collateral is objectively determinable. TEX. BUS. & COM. CODE § 9.108(a)-(b).

payment "is secured by a vendor's lien and superior title retained in [the] Bill of Sale" (Doc. No. 5-1 at p. 2). The Bill of Sale and the Promissory Note together constitute one transaction and create a security interest in the Business Property in Patricia's favor. Patricia subsequently perfected her security interest (Doc. No. 5-3). ETOFC defaulted on its payment obligations under the Promissory Note. Patricia gave ETOFC advance notice of default as required by the Promissory Note; however, ETOFC failed to cure its default. Patricia is entitled to reduce her claim to judgment, to foreclose her security interest in the Business Property, and to judicial process to aid in effecting possession and sale of the Business Property.

### iii.    The Court should award attorney's fees to Patricia.

The Promissory Note requires ETOFC to pay Patricia's attorney's fees and costs if she engages an attorney to collect or enforce it:

> Borrower also promises to pay reasonable attorney's fees and court and other costs if an attorney is retained to collect or enforce the note. Borrower will pay Lender these expenses on demand at the Place for Payment. These expenses will become part of the debt evidenced by the note and will be secured by any security for payment.

(Doc. No. 5-1 at p. 3).[24]

Where, as here, state law supplies the rule of decision, "[s]tate law controls both the award of and the reasonableness of fees awarded…." *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 216 (5th Cir. 2020), *as revised* (Sept. 17, 2020) (quoting *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir.2002)). The Texas Supreme Court directs the party seeking fees to demonstrate its fees are reasonable and necessary by producing sufficient evidence of reasonable hours worked multiplied by reasonable rates charged. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019).  Sufficient evidence includes evidence of:

---

[24] *See also* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8) ("A person may recover reasonable attorney's fees from an individual or organization … in addition to the amount of a valid claim and costs, if the claim is for … an oral or written contract").

a.      the particular services performed;

b.      who performed those services;

c.      approximately when the services were performed;

d.      the reasonable amount of time required to perform the services; and

e.      the reasonable hourly rate for each person performing such services.

*Id.* The reasonableness of the amount of time expended and the hourly rates charged can be determined by evaluating the non-exclusive *Arthur Anderson* factors, which include:

a.      the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

b.      whether acceptance of the particular employment precludes other employment by the lawyer;

c.      the fee customarily charged in the locality for similar legal services;

d.      the amount involved and the results obtained;

e.      the time limitations imposed by the client or by the circumstances;

f.      the nature and length of the professional relationship with the client;

g.      the experience, reputation, and ability of the lawyer or lawyers performing the services; and

h.      whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 494. The Court presumes that this calculation, when supported by sufficient evidence, reflects reasonable and necessary fees that can be shifted to the other party. *Id.* at 499.

As demonstrated in the attached declaration of Jim E. Bullock, the attorney's fees and expenses incurred in the efforts to collect and enforce the Promissory Note were reasonable and necessary. Mr. Bullock's declaration attaches billing records (i) containing time entries reflecting each task or service provided by the professionals who worked in this effort and (ii) the applicable rate for each professional multiplied by the number of hours that professional spent working on the matter.[25] Additionally, Mr. Bullock testifies to the specific education, background, and experience of each professional working on this matter relative to the type of work required and the reasons for their

---

[25] Bullock Declaration at ¶ 9.

staffing on this matter.[26] He opines that the time and labor required to obtain the result were reasonable and necessary and that the rates charged are customary and well-within the range charged by similar professionals doing similar work in this market.[27] Finally, Mr. Bullock's testimony addresses segregation of fees incurred in the efforts to collect and enforce the Promissory Note from fees incurred on other matters in this litigation, to the extent the workload between these claims or defenses can be segregated into discrete legal services.[28]

Based on Mr. Bullock's declaration and the accompanying billing records, fees in the amount of $42,319.07 and expenses in the amount of $300.42 are reasonable and necessary to collect or enforce the Promissory Note.[29] These fees and expenses total $42,619.49, and the Court should award Patricia this amount.

**C.     Patricia is entitled to a default judgment for monetary damages, attorney's fees, and foreclosing her security interest.**

The third prong of analysis is what form of relief, if any, a plaintiff should receive. *Griffin*, 2023 WL 4303649 at *2; *Express Working Capital*, 2019 WL 1959924 at *3 (N.D. Tex. Apr. 10, 2019). The Court may conduct a hearing, if it desires, to determine the amount of damages. FED. R. CIV. P. 55(b)(2). However, where the amount claimed is a liquidated sum or one capable of mathematical

---

[26] *Id.*, at ¶¶ 8, 11.

[27] *Id.*, at ¶¶ 10-16.

[28] *Id.*, at ¶ 13. When discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined, they need not be segregated. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex. 1991), *holding modified by Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006) ("when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims"). Attorneys may opine as to the percentage of their overall work that would have been necessary absent the unrecoverable claim. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 314; *ATOM Instrument Corp.*, 969 F.3d at 217. "The test is not whether the pursuit of [unrecoverable] claims added to the workload in the abstract, but instead whether discrete legal services can be segregated between those devoted to the [recoverable] claims and those devoted to the [unrecoverable] ones." *Uretek (USA), Inc. v. Ureteknologia de Mexico S.A. de C.V.*, 589 Fed. Appx. 710, 716 (5th Cir. 2014).

[29] Bullock Declaration at ¶ 16.

---

calculation, the Court is free to grant damages in a default judgment without a hearing. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Such is the case here.

As of April 1, 2024, ETOFC owes Patricia $140,266.97, being $129,000.00 in unpaid principal plus $11,266.97 in interest (with interest accruing at the rate of $21.21 per day).[30] Additionally, Patricia is entitled to $42,619.49 in reasonable attorney's fees and expenses incurred in pursuing collection and enforcement of the Promissory Note against ETOFC.[31] Patricia is entitled to reduce her claim to judgment, to judicial foreclosure of her security interest, and to possession and sale of the Business Property.

Hence, the Court should grant Patricia a default judgment against ETOFC as follows:

(i)       ordering ETOFC to pay her the sum of $140,266.97 plus daily prejudgment interest of $21.21 from April 2, 2024 until the date of judgment, post-judgment interest at the lawful rate from the date of judgment until fully paid, $42,619.49 in reasonable attorney's fees and expenses, and costs of court (as determined by the clerk of the court);

(ii)      foreclosing Patricia's security interest in and lien against the Business Property;

(iii)     granting Patricia such writs as appropriate to be executed against the Business Property by the U.S. Marshal, his designee, or such other person specially appointed by the Court pursuant to Federal Rule of Civil Procedure 4.1(a);

(iv)      ordering the U.S. Marshal, his designee, or such other person specially appointed by the Court pursuant to Federal Rule of Civil Procedure 4.1(a), to sell the Business Property at public auction with the proceeds (less the costs allowed by law) promptly paid to Patricia until the judgment is fully paid and satisfied (and any amounts remaining thereafter to be paid to ETOFC); and

---

[30] *Supra* at footnotes 6-12. 6%/year ÷ 365 days = 0.01643836%/day; 0. 0.01643836%/day x $129,000.00 = daily interest of $21.21.

[31] *Supra* at footnotes 25-29.

(v)        granting Patricia judgment for the deficient balance, if any, remaining due and owing after such sale.

## CONCLUSION & PRAYER

ETOFC defaulted on its payment obligations under the Promissory Note, and its obligations were secured by Patricia's security interest in and lien against the Business Property. When Patricia gave notice of this default, ETOFC ignored her. When Patricia filed her counterclaim against ETOFC for breach of the Promissory Note and to foreclose her lien, ETOFC ignored her. When the Court ordered ETOFC to obtain new counsel or suffer default and default judgment, ETOFC ignored the Court. Entry of default against ETOFC is warranted, and so is granting Patricia default judgment against ETOFC. Her damages are capable of mathematical calculation; she has a lien against clearly defined Business Property.

Accordingly, Patricia prays that the Court:

(1)        order the clerk to enter default against ETOFC;

(2)        render default judgment against ETOFC, without a hearing, granting Patricia judgment against ETOFC as requested herein; and

(3)        grant Patricia such other relief to which she may be entitled.

Respectfully submitted,
**JOHNSTON CLEM GIFFORD PLLC**

By:  /s/ Jim E. Bullock
**Jim E. Bullock**
Texas Bar No. 00795271
jbullock@johnstonclem.com

**Thomas Erik Samuelson**
Texas Bar No. 24110766
tsamuelson@johnstonclem.com

5 Cowboys Way, Suite 300
Frisco, Texas 75034
(214) 974-8000 Main
(972) 474-1762 J. Bullock Direct

*Counsel for Defendant*

**Certificate of Service**

I certify that my office served a true and correct copy of this document on all parties on April 5, 2024. Parties able to receive transmission via the Court's ECF system were provided an electronic copy via the Court's ECF system. A true and correct copy of this document was mailed to Danny Johnston, *pro se*, 11340 FM 315, Palestine, Texas 75083 via U.S. first class mail. A true and correct copy of this document was mailed to East Texas Oil Field Construction, LLC, c/o its registered agent Daniel Wylie Johnston, 12990 FM 315, Palestine, Texas 75083 via U.S. first class mail.

By:  /s/ Jim E. Bullock
**Attorney Certifying**