IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DANNY JOHNSTON, | § | |
|     PLAINTIFF/COUNTER-DEFENDANT, | § | |
| | § | |
| V. | § | |
| | § | |
| PATRICIA ANN JOHNSTON, | § | |
|     DEFENDANT/COUNTER-PLAINTIFF | § | CASE NO. 6:23-CV-413-JDK-KNM |
| | § | |
| V. | § | |
| | § | |
| EAST TEXAS OIL FIELD CONSTRUCTION, | § | |
| LLC, | § | |
|     COUNTER-DEFENDANT | § | |

**PATRICIA JOHNSTON'S MOTION FOR DEFAULT JUDGMENT AGAINST
EAST TEXAS OIL FIELD CONSTRUCTION, LLC**

Counter-Plaintiff Patricia Johnston ("**Patricia**") moves for entry of default judgment against Counter-Defendant East Texas Oil Field Construction, LLC ("**ETOFC**").

**PROCEDURAL BACKGROUND**

Patricia filed a counterclaim against ETOFC for breach of a promissory note and foreclosure of her lien against specific personal property, Doc. 5, and served ETOFC with summons. Doc. 13. ETOFC did not answer Patricia's counterclaim.[1] Rather, ETOFC and co-counter-defendant Danny Johnston ("**Danny**") sought but failed to dismiss Patricia's counterclaim under Federal Rule of Civil Procedure 12(b)(1). Docs. 17, 20, 31, 34. Thereafter, the Court permitted ETOFC's counsel to withdraw and ordered ETOFC to obtain new counsel or suffer default. Docs. 24, 27, 37.[2] ETOFC ignored the Court's numerous warnings. *See e.g.* Docs. 26, 55.

---

[1] Patricia requests that the Court take judicial notice of the documents filed in this matter. FED. R. EVID. 201.

[2] A limited liability company cannot represent itself in a lawsuit but must be represented by a licensed attorney. *See United States ex rel. Proctor v. Next Health LLC*, 652 F. Supp. 3d 788, 794 (E.D. Tex. 2023); *Texas Construction Specialists, L.L.C. v. Ski Team VIP, L.L.C.*, 659 S.W.3d 67, 74 (Tex. App.—Houston [14th Dist.] 2022, pet. denied).

In April 2024, Patricia filed her amended counterclaim. Doc. 47. By its June 18, 2024 order, the Court reminded ETOFC that it must obtain counsel and had 14 days to respond to Patricia's amended counterclaim. Doc. 53.[3] Again, ETOFC ignored the Court's order and admonition. Default was entered against ETOFC on August 5, 2024. Docs. 69-70.

## FACTUAL BACKGROUND

Danny is the sole member and manager of ETOFC. Doc. 20 at p.1, footnote 1, and Exhibits 1-2 attached thereto. In December 2020, ETOFC and Danny agreed to buy business and personal property from Patricia, Doc. 47-2 (the "**Bill of Sale**"), and to pay her $191,500.00 "in equal monthly installments of [$5,000.00], on the first day of each month, beginning August 2020 and continuing until the unpaid principal has been paid in full." Doc. 47-1 (the "**Promissory Note**").[4] Based on that payment schedule, the Promissory Note would mature, and all unpaid amounts would be due and owing, on October 1, 2023.[5]

Under the Bill of Sale, and in consideration of the Promissory Note (and other promises made in the Bill of Sale), Patricia sold the following property to ETOFC:

> Any and all assets of East Texas Oil Field Construction, including but not limited to, its name, goodwill, receivables, claims, furniture, fixtures, machinery, machinery listed below, equipment, inventory, accounts, goods, supplies, and personal property used in connection with the operation of the business, the exclusive right to the name of East Texas Oil Field Construction, desks, office supplies, account receivables, cash, and bank accounts.
>
> D5K2 Dozer Serial Number: KY202873
> D4G Dozer Serial Number: TLY00793
> CAT 420E Backhoe Serial Number: DJL0269
> CASE 580 Super L Backhoe Serial Number: 00270801

---

[3] *See* FED. R. CIV. P. 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later").

[4] Declaration of Patricia Johnston attached hereto ("**Johnston Declaration**") at ¶¶ 2-3. No interest rate is specified in the Promissory Note. Doc. 47-1.

[5] Declaration of Jim E. Bullock attached hereto ("**Bullock Declaration**") at ¶¶ 2-4.

> CAT 320C Track hoe Serial Number: 0320CLEA600903
> 7610 New Holland Tractor Serial Number: 81866555
> 6610 New Holland Tractor Serial Number: E9NN7006A 3600 Ford Tractor
> Two 8' mowers
> 8' Disc
> 6' Disc
> Single row planter
> Plow
> Band saw mill
> Wood mizer Serial Number: 45LB42413GVBA6073
> Volvo 70C rubber tire loader Serial Number: L70CV13879
> Noram 65E motor grader Serial Number: 65E79507
> Chevrolet pickup VIN: lgb4kzcl90f88514
> Goose Neck Trailer 28' Legend Serial Number: 5D3BG2929EE104596
> Goose Neck Trailer 32' Trail Master Serial Number: 5BEBF32257C144483
> Goose Neck Trailer PJ 28' 4P5FD3027Cl 178980

(collectively, the "**Business Property**"). Doc. 47-2, pp. 2-3.[6]

ETOFC's payment obligation was "secured by a vendor's lien and superior title retained in [the] Bill of Sale." Doc. 47-2 at p. 2. The Bill of Sale mirrored this lien stating that the Promissory Note "is secured by a first and superior vendor's lien and superior title retained in this Bill of Sale." Doc. 47-2 at p. 2. Patricia perfected her security interest by filing a UCC-1 financing statement with the Texas Secretary of State. Doc. 47-3.

ETOFC and Danny are jointly and severally liable for the debt evidenced by the Promissory Note. Doc. 47-1 at p. 4 ("Each Borrower is responsible for all obligations represented by this note"). Despite its promise, ETOFC made no payments in August 2020 or September 2020.[7] Between October 2020 and September 2021, ETOFC made the following payments:[8]

| Payment Date | Check Number | Payment Amount |
|---|---|---|
| 10/1/2020 | 4608 | $5,000.00 |
| 10/30/2020 | 4664 | $5,000.00 |
| 12/1/2020 | 4752 | $5,000.00 |
| 1/2/2021 | 4800 | $3,000.00 |

---

[6] Citations to documents filed via the Court's CM/ECF system refer to the page number at the top of each page rather than page numbers at the bottom of a filing.

[7] Johnston Declaration at ¶ 4.

[8] Johnston Declaration at ¶ 5; Declaration of Melinda Naquin attached hereto ("**Naquin Declaration**") at ¶ 2.

| Payment Date | Check Number | Payment Amount |
|---|---|---|
| 1/2/2021 | 4801 | $2,000.00 |
| 1/29/2021 | 4832 | $5,000.00 |
| 3/5/2021 | 4842 | $5,000.00 |
| 3/30/2021 | 4950 | $5,000.00 |
| 4/3/2021 | 4883 | $5,000.00 |
| 4/29/2021 | 4916 | $5,000.00 |
| 7/19/2021 | 4982 | $5,000.00 |
| 7/31/2021 | 4998 | $5,000.00 |
| 9/13/2021 | 5033 | $5,000.00 |

ETOFC sent a payment in October 2021 that "bounced" due to insufficient funds.[9] For nearly two years, ETOFC made no payments until it made a partial payment of $2,500.00 on June 11, 2022 (check number 5129) and made no payment after June 11, 2022.[10]

The Promissory Note provides:

> Notwithstanding any other provision of this note, in the event of a default, before exercising any of Lender's remedies under this note or any deed of trust or warranty deed with vendor's lien securing it, Lender will first give Borrower written notice of default and Borrower will have ten days after notice is given in which to cure the default. If the default is not cured ten days after notice, (1) Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law; and (2) Lender may declare the unpaid principal balance, and any other amounts owed on the note immediately due and may exercise all other rights and remedies available at law or in equity.

Doc. 47-1 at p. 3. Accordingly, on July 12, 2023, Patricia gave ETOFC written notice of its default under the Promissory Note, Doc. 16-8; however, ETOFC did not cure its default.[11]

In total, ETOFC only paid Patricia $62,500.00 of the $191,500.00 original principal balance leaving a total unpaid principal balance of $129,000.00.[12] Pursuant to Texas Finance Code section

---

[9] Johnston Declaration at ¶ 6; Naquin Declaration at ¶ 2.

[10] Johnston Declaration at ¶ 7; Naquin Declaration at ¶ 2.

[11] Johnston Declaration at ¶ 8; Bullock Declaration at ¶ 17.

[12] Bullock Declaration at ¶ 5.

302.002,[13] ETOFC owes Patricia interest of $15,422.97 on the unpaid principal balance through September 30, 2024.[14]  Hence, as of September 30, 2024, ETOFC owes Patricia principal and interest totaling $144,422.97 with $645.00 additional interest accruing every 30 days thereafter.

## ARGUMENT & AUTHORITIES

After a defendant's default has been entered, the plaintiff may apply for entry of a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *Williams v. Licari*, No. 4:22-CV-5-ALM-KPJ, 2023 WL 6048774, at *3 (E.D. Tex. Sept. 14, 2023). In determining whether a default judgment should be entered, courts in the Fifth Circuit have developed a three-part analysis assessing: (a) whether the default judgment is procedurally warranted, (b) whether there is a sufficient basis in the pleadings for the judgment, and (c) what form of relief, if any, should be granted. *Griffin v. O'Brien, Wexler, & Associates, LLC*, No. 4:22-CV-00970, 2023 WL 4303649, at *2 (E.D. Tex. June 30, 2023); *Express Working Capital, LLC v. One World Cuisine Group, LLC*, No. 3:15-CV-3792-S-BH, 2019 WL 1959924, at *3 (N.D. Tex. Apr. 10, 2019), *report and recommendation adopted*, No. 3:15-CV-3792-S-BH, 2019 WL 1958332 (N.D. Tex. May 2, 2019).

## A.    A default judgment is procedurally warranted.

In considering whether a default judgment is procedurally warranted, the Court considers six factors: (i) whether material issues of fact exist; (ii) whether there has been substantial prejudice; (iii) whether the grounds for default are clearly established; (iv) whether the default was caused by a good faith mistake or excusable neglect; (v) the harshness of a default judgment; and (vi) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

---

[13] "If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due." TEX. FIN. CODE § 302.002.

[14] Bullock Declaration at ¶ 6.

No material issues of fact exist here. In her counterclaim, Patricia alleged that (i) ETOFC executed the Promissory Note (and attached a copy of the executed note bearing its owner's signature), (ii) ETOFC failed to perform its obligations under the Promissory Note, and (iii) she complied with the Promissory Note's notice requirements. ETOFC defaulted and has conceded Patricia's allegations. *See Griffin*, 2023 WL 4303649 at *3; *Cunningham v. Crosby Billing Services, Corp.*, No. 4:18-CV-00043-ALM-CAN, 2018 WL 6424792, at *3 (E.D. Tex. Oct. 14, 2018), *report and recommendation adopted*, No. 4:18-CV-43, 2018 WL 6424695 (E.D. Tex. Dec. 5, 2018). No material issue of fact exists.

Default judgment would not constitute a harsh remedy. ETOFC unnecessarily delayed this case by refusing to answer Patricia's counterclaim, pressing a meritless motion to dismiss, and failing to obtain new counsel despite the Court's orders with ample opportunity to comply; rather than suffering prejudice, ETOFC has **caused** Patricia prejudice. *Id.*; *Express Working Capital*, 2019 WL 1959924 at *4. A default judgment is **not** unusually harsh in this case.

Grounds for default have been clearly established, Docs. 69-70, and were not caused by a good faith mistake or excusable neglect. After pressing then abandoning a meritless dismissal motion, ETOFC failed to answer Patricia's counterclaim and her amended counterclaim. Further, ETOFC defied the Court's orders to obtain new counsel or suffer default, despite having ample time to comply. ETOFC's default was not caused by a good faith mistake or excusable neglect but rather by its contumacious refusal to comply with procedural rules and this Court's orders, justifying an entry of default judgment. *Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018); *I.B.E.W. Local Union No. 479 Annuity 401K Fund v. Beaumont Electric, Inc.*, No. 1:15-CV-203, 2015 WL 13298143, at *1 (E.D. Tex. Aug. 3, 2015); *United States v. Dolenz*, No. CIV. 309CV1311O, 2010 WL 428910, at *2 (N.D. Tex. Feb. 2, 2010).

Finally, the Court should not think itself obliged to set aside the default upon subsequent request. ETOFC's conduct (refusing to answer Patricia's counterclaim, filing then abandoning a

specious motion to dismiss, flatly disregarding the Court's orders to obtain new counsel), delayed this action and prejudiced Patricia by delaying her relief. In similar situations, courts have found no basis upon which they would be obligated to set aside the default. *Griffin*, 2023 WL 4303649 at \*3; *Express Working Capital*, 2019 WL 1959924 at \*4; *Cunningham*, 2018 WL 6424792 at \*3.

Put simply, a default judgment against ETOFC is procedurally warranted.[15]

## B. Patricia is entitled to a default judgment based on her pleadings.

Next, the Court assesses whether there is a sufficient basis in Patricia's pleadings for the judgment (even though ETOFC is deemed to have admitted the allegations in her complaint). *Griffin*, 2023 WL 4303649 at \*4; *Express Working Capital*, 2019 WL 1959924 at \*4. Ultimately, "the factual allegations in [Patricia's counterclaim] need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal notations omitted).

### 1. ETOFC defaulted under the Promissory Note (Patricia's Claim Three)

Patricia claims that ETOFC defaulted under the Promissory Note. Doc. 47 at ¶¶ 44-48. Under Texas law,[16] Patricia must show that (a) the Promissory Note exists, (b) ETOFC signed the Promissory Note, (c) she is entitled to enforce the Promissory Note, and (d) a certain balance is due and owing under the Promissory Note. *See SGK Properties, L.L.C. v. U.S. Bank National Association for Lehman Bros. Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 941 (5th Cir. 2018); *F.D.I.C. v. Foxwood Management Company*, 15 F.3d 180 (5th Cir. 1994).

---

[15] One district court in the 5th Circuit has also required a party seeking default judgment to make a prima facie showing of jurisdiction. *TFHSP, LLC Series 10147 v. U.S. Bank National Association*, No. 3:14-CV-2589-M-BN, 2016 WL 2856006, at \*2 (N.D. Tex. Apr. 18, 2016), *report and recommendation adopted sub nom. TFHSP, LLC v. U.S. Bank National Association*, No. 3:14-CV-2589-M-BN, 2016 WL 2853565 (N.D. Tex. May 13, 2016). Patricia has shown that she is a resident of Louisiana, that ETOFC is a Texas limited liability company, and that the amount in controversy exceeds $75,000.00; thus, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (Doc. 47 at ¶¶ 1, 3-4).

[16] In diversity cases, federal courts apply the forum state's substantive law and the federal procedural rules. *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023).

The Promissory Note exists; a true and correct copy is attached to Patricia's counterclaim. Doc. No. 47-1.[17] The Promissory Note is signed by Daniel Wylie Johnston (a/k/a Danny Johnston), ETOFC's sole member. *Id.*, at p. 4; Doc. 20 at p.1, footnote 1, and Exhibits 1-2 attached thereto. The Promissory Note names Patricia as the "Lender" and the payee entitled to enforce it. *Id.*, at pp. 2-3.[18] As "Borrower," ETOFC promised "to pay to the order of Lender the Principal Amount" and agreed "in the event of a default…Lender may declare the unpaid principal balance, and any other amounts owned on the note immediately due and may exercise all other rights and remedies available at law or in equity" *Id.*[19] Patricia complied with the notice of default requirements of the Promissory Note. Doc. 16-8. However, ETOFC did not cure its default.[20] ETOFC paid Patricia only $62,500.00 of the $191,500.00 principal balance leaving $129,000.00 unpaid and owing under the Promissory Note.[21] Additionally, ETOFC owes Patricia interest of $15,422.97 through September 30, 2024 with $645.00 additional interest accruing every month.[22] As of September 30, 2024, ETOFC owes Patricia unpaid principal and interest equaling a sum certain balance of $144,422.97. There is a sufficient basis in the pleadings for Patricia to recover on the Promissory Note against ETOFC. *See Express Working Capital*, 2019 WL 1959924 at *5.

## 2. The Court should foreclose Patricia's lien (Patricia's Claim Four)

Patricia claims a security interest in the Promissory Note and Bill of Sale giving her a lien against the Business Property; she asks the Court to foreclose this lien, take possession of the property,

---

[17] Johnston Declaration at ¶ 2.

[18] "Lender" is defined as "Patricia Ann Johnston, individually and as independent executor of the estate of Thomas William Johnston, deceased." Doc. No. 47-1 at p. 1. As the independent executor and sole beneficiary of her husband's estate, she held all interests in repayment under and enforcement of the Promissory Note. Doc. 20 at pp. 2, 5-8. Moreover, the estate of Thomas William Johnston has been closed. Johnston Declaration at ¶¶ 2-3. Patricia solely and individually has the right to enforce the Promissory Note.

[19] ETOFC and Danny are each liable under the Promissory Note. Doc. 47-1 at p. 4.

[20] *Supra* at footnotes 11.

[21] *Supra* at footnotes 7-12.

[22] *Supra* at footnotes 13-14.

sell it at public auction, and thereafter enter judgment for any deficient balance. Doc. 47 at ¶ 49. Under Texas law,[23] if the seller of title in property retained or reserved an interest in the property to secure the buyer's payment or performance of an obligation, then the seller has a security interest in the property. TEX. BUS. & COM. CODE §§ 1.201(b)(35), 2.401(a). A security agreement need not be evidenced by a single document; two or more writings, considered together, may constitute a security agreement. *Matter of Miller*, 545 F.2d 916, 919 n. 4 (5th Cir. 1977); *In re ProvideRx of Grapevine*, 507 B.R. at 153; *In re Webber*, 350 B.R. 344, 385 (Bankr. S.D. Tex. 2006). Courts examine whether the substance and language of the documents lead to a logical conclusion that the parties intended to create a security interest in the property; no formal wording is required. *Sommers v. International Business Machines*, 640 F.2d 686, 689 (5th Cir. 1981) (internal notations omitted); *In re ProvideRx of Grapevine*, 507 B.R. at 153, 160. If the debtor defaults, the secured party may reduce her claim to judgment and foreclose, or otherwise enforce, the security interest and may sell or otherwise dispose of the collateral. FED. R. CIV. P. 69; TEX. BUS. & COM. CODE §§ 9.601(a)(1), 9.610(a); *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 769 (S.D. Tex. 2013).

Here, the Bill of Sale and the Promissory Note together evidence the transaction between Patricia and ETOFC. The Bill of Sale states the Business Property is sold in consideration of the Promissory Note which "is secured by a first and superior vendor's lien and superior title retained in this Bill of Sale." Doc. 47-2 at p. 2. The Promissory Note states that ETOFC's payment obligation "is secured by a vendor's lien and superior title retained in [the] Bill of Sale." Doc. 47-1 at p. 2. The Business Property that is subject to Patricia's lien is clearly defined. Doc. 47-2 at pp. 2-3.[24] The Bill of Sale and the Promissory Note together constitute one transaction and create Patricia's security interest

---

[23] Whether an agreement constitutes a security arrangement is determined with reference to state law. *In re ProvideRx of Grapevine, LLC*, 507 B.R. 132, 152 (Bankr. N.D. Tex. 2014).

[24] The property is sufficiently identified if its description reasonably identifies the property or by another method if the identity of the collateral is objectively determinable. TEX. BUS. & COM. CODE § 9.108(a)-(b).

in the Business Property. Patricia subsequently perfected her security interest. Doc. 47-3. ETOFC defaulted on its payment obligations under the Promissory Note.[25] Patricia gave ETOFC written notice of default as required by the Promissory Note, Doc. 16-8; however, ETOFC did not cure its default.[26] Patricia is entitled to reduce her claim to judgment, to foreclose her security interest in the Business Property, and to judicial process to aid in effecting possession and sale of the Business Property.

### 3.     The Court should award attorney's fees to Patricia.

The Promissory Note requires ETOFC to pay Patricia's attorney's fees and costs if she engages an attorney to collect or enforce it:

> Borrower also promises to pay reasonable attorney's fees and court and other costs if an attorney is retained to collect or enforce the note. Borrower will pay Lender these expenses on demand at the Place for Payment. These expenses will become part of the debt evidenced by the note and will be secured by any security for payment.

Doc. 47-1 at p. 3.[27] And Patricia has requested an award of attorney's fees and costs. Doc 47 at ¶ 50.

Where, as here, state law supplies the rule of decision, "[s]tate law controls both the award of and the reasonableness of fees awarded…." *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 216 (5th Cir. 2020), *as revised* (Sept. 17, 2020) (quoting *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir.2002)). The Texas Supreme Court directs the party seeking fees to demonstrate its fees are reasonable and necessary by producing sufficient evidence of reasonable hours worked multiplied by reasonable rates charged. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). Sufficient evidence includes evidence of:

    a.     the particular services performed;

---

[25] *Supra* at footnotes 7-12.

[26] *Supra* at footnotes 11.

[27] *See also* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8) ("A person may recover reasonable attorney's fees from an individual or organization … in addition to the amount of a valid claim and costs, if the claim is for … an oral or written contract").

b.      who performed those services;

c.      approximately when the services were performed;

d.      the reasonable amount of time required to perform the services; and

e.      the reasonable hourly rate for each person performing such services.

*Id.* The reasonableness of the amount of time expended and the hourly rates charged can be determined by evaluating the non-exclusive *Arthur Anderson* factors, which include:

a.      the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

b.      whether acceptance of the particular employment precludes other employment by the lawyer;

c.      the fee customarily charged in the locality for similar legal services;

d.      the amount involved and the results obtained;

e.      the time limitations imposed by the client or by the circumstances;

f.      the nature and length of the professional relationship with the client;

g.      the experience, reputation, and ability of the lawyer or lawyers performing the services; and

h.      whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 494. The Court presumes that this calculation, when supported by sufficient evidence, reflects reasonable and necessary fees that can be shifted to the other party. *Id.* at 499.

        As demonstrated in the attached declaration of Jim E. Bullock, the attorney's fees and expenses incurred in the efforts to collect and enforce the Promissory Note were reasonable and necessary. Mr. Bullock's declaration attaches billing records (i) containing time entries reflecting each task or service provided by the professionals who worked in this effort and (ii) the applicable rate for each professional multiplied by the number of hours that professional spent working on the matter.[28] Additionally, Mr. Bullock testifies to the specific education, background, and experience of each professional working on this matter relative to the type of work required and the reasons for their

---

[28] Bullock Declaration at ¶¶ 8-11.

staffing on this matter.[29] He opines that the time and labor required to obtain the result were reasonable and necessary and that the rates charged are customary and well-within the range charged by similar professionals doing similar work in this market.[30] Finally, Mr. Bullock's testimony addresses segregation of fees incurred in the efforts to collect and enforce the Promissory Note from fees incurred on other matters in this litigation, to the extent the workload between these claims or defenses can be segregated into discrete legal services.[31]

Based on Mr. Bullock's declaration and the accompanying billing records, fees in the amount of $60,726.49 and expenses in the amount of $653.03 are reasonable and necessary to collect or enforce the Promissory Note.[32] These fees and expenses total $61,379.52, and the Court should award Patricia this amount.

## C.    Patricia is entitled to a default judgment for monetary damages, attorney's fees, and foreclosing her security interest.

The third prong of analysis is what form of relief, if any, a plaintiff should receive. *Griffin*, 2023 WL 4303649 at *2; *Express Working Capital*, 2019 WL 1959924 at *3 (N.D. Tex. Apr. 10, 2019). The Court may conduct a hearing, if it desires, to determine the amount of damages. FED. R. CIV. P. 55(b)(2). However, where the amount claimed is a liquidated sum or one capable of mathematical

---

[29] *Id.*.

[30] *Id.*, at ¶¶ 10-16.

[31] *Id.*, at ¶ 12. When discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined, they need not be segregated. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex. 1991), *holding modified by Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006) ("when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims"). Attorneys may opine as to the percentage of their overall work that would have been necessary absent the unrecoverable claim. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 314; *ATOM Instrument Corp.*, 969 F.3d at 217. "The test is not whether the pursuit of [unrecoverable] claims added to the workload in the abstract, but instead whether discrete legal services can be segregated between those devoted to the [recoverable] claims and those devoted to the [unrecoverable] ones." *Uretek (USA), Inc. v. Ureteknologia de Mexico S.A. de C.V.*, 589 Fed. Appx. 710, 716 (5th Cir. 2014).

[32] Bullock Declaration at ¶ 16.

---

calculation, the Court is free to grant damages in a default judgment without a hearing. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Such is the case here.

As of September 30, 2024, ETOFC owes Patricia $144,422.97, being $129,000.00 in unpaid principal plus $15,422.97 in interest (with additional interest accruing at the rate of $645.00 every 30 days after September 30, 2024).[33] Additionally, Patricia is entitled to $61,379.52 in reasonable attorney's fees and expenses incurred in pursuing collection and enforcement of the Promissory Note against ETOFC.[34] The amounts Patricia seeks are capable of mathematical calculation.

Hence, the Court should grant Patricia the following relief:

(i)      $144,422.97 in damages against ETOFC plus additional pre-judgment interest of $645.00 accruing every 30 days after September 30, 2024 until the date of judgment, $61,379.52 in reasonable attorney's fees and expenses, costs of court (as determined by the clerk of the court), and, post-judgment interest at the lawful rate from the date of judgment until fully paid;

(ii)     foreclosure of her lien against the Business Property;

(iii)    writs as appropriate to be executed against the Business Property by the U.S. Marshal, his designee, or such other person specially appointed by the Court pursuant to Federal Rule of Civil Procedure 4.1(a), ordering the U.S. Marshal, his designee, or such other person specially appointed by the Court pursuant to Federal Rule of Civil Procedure 4.1(a), to sell the Business Property at public auction with the proceeds (less the costs allowed by law) promptly paid to Patricia until the judgment is fully paid and satisfied (and any amounts remaining thereafter to be paid to ETOFC); and

(iv)     judgment for the deficient balance, if any, remaining due and owing after such sale.

Such relief is grounded in the applicable law, supported by the pleadings and the facts, and both just and equitable.

### CONCLUSION & PRAYER

ETOFC defaulted on its payment obligations under the Promissory Note. Its obligations were secured by Patricia's security interest in and lien against the Business Property. When Patricia gave

---

[33] *Supra* at footnotes 7-14.

[34] *Supra* at footnotes 28-32.

notice of this default, ETOFC ignored her. When Patricia filed her counterclaim for breach of the Promissory Note and to foreclose her lien, ETOFC ignored her. When the Court ordered ETOFC to obtain new counsel or suffer default judgment, ETOFC ignored the Court. Entry of default against ETOFC was warranted, and so is granting Patricia default judgment against ETOFC. Her damages are capable of mathematical calculation, and she has a lien against clearly defined Business Property.

Accordingly, Patricia prays that the Court:

(1)    render default judgment against ETOFC, without a hearing, granting Patricia judgment against ETOFC as requested herein; and

(2)    grant Patricia such other relief to which she may be entitled.

Respectfully submitted,
**GRABLE MARTIN PLLC**

By:  */s/ Jim E. Bullock*
**Jim E. Bullock**
Texas Bar No. 00795271
jbullock@grablemartin.com

5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 342-4662 J. Bullock Direct

*Counsel for Defendant*

**Certificate of Service**

I certify that a true and correct copy of this document was mailed to Danny Johnston and East Texas Oil Field Construction, LLC, 12990 FM 315, Palestine, Texas 75803 via U.S. first class mail, certified mail, on October 4, 2024.

By:   */s/ Jim E. Bullock*
**Attorney Certifying**